The plaintiff and the appellee in Northbrook Bank and Trust Company. All right, so 15 minutes apiece. Time for a vote? Maybe. Five minutes. Five minutes? All right. Thank you. If it pleases the court, your honors, the three broad issues that are before the court are whether the plaintiff's August 15, 2016 trial exhibit trial book should have been borrowed by the court, the trial court. The second issue is whether Northbrook Bank proved its right of recovery under the various loan documents. And thirdly, whether the award of attorney's fees was warranted. Why don't we start with that issue first in terms of the attorney's fees. And I just wanted to also note that what is a little unusual is that the court allowed Northbrook Bank to file a service response brief, which to me indicates that the court felt that there were some issues that were in the reply brief that either needed to be fleshed out in more detail, or the court maybe felt were not raised previously and was giving Northbrook Bank an opportunity now to respond to what could possibly have been perceived by the court as new issues. And if that's the case, then, you know, Northbrook Bank caught on to that. And in their sole response, they argued later that these were issues that should have been brought up earlier and were weighed because they were not brought up earlier. But since this court gave Northbrook Bank an opportunity to file the sole response, it basically said, okay, maybe there were some new issues and new arguments. We're giving you an opportunity now to deal with it. So you really suffered no prejudice because you were given a full opportunity to respond to these issues. What does that have to do with the attorney's fees? Well, I just wanted to mention that because it was unusual that the court filed a sole response. And as far as the attorney's fees, maybe one of the issues that came up in our briefs, in the reply brief, fleshed out a little more, is whether the language in the loan agreement entitled Northbrook Bank to recover fees in satellite litigation as well as pre-bleach activities. Your client, along with their client, entered into an agreement with regards to the fees, right? Well, the loan agreement does have language in there regarding the attorney's fees. The question is whether the court's interpretation of it so broadly was proper, when really the law is that since this is a derogation of the common law, the courts have to construe these things strictly. And the trial court actually construed it very broadly. And my argument is, and I fleshed it out a little more in the reply brief, that it is not to be interpreted in that fashion. And certainly, Mr. August had no idea that he was now going to be liable for attorney's fees regarding properties foreclosure actions that were filed against Freeman Property that were not even listed. All right, well, then how would you interpret the language, quote, and any other documents executed in connection with this agreement, end quote? It's ambiguous. It's so broad. We didn't draft it. The trial court didn't draft it. You and the bank drafted it. Well, actually, the bank drafted it. And since then, the draft or any ambiguity has been strewn against them. Okay. And I would say that the language after that where they actually list the four properties that they can now, that are part of the collateral, I think that's the limitation. I mean, why specify a specific group and then have broad language in there? It's either one or the other. So are you saying that Mr. August and Mr. Freeman are not jointly and soberly liable? Only for the properties that were listed in the loan agreement. And of those properties, only one actually was part of the plaintiff's fee petition. Mr. Tuesley pointed out that actually there was another property, the Florida property, that's also listed in the loan agreement. It wasn't clear based on the language in the loan agreement or in the plaintiff's fee petition that they were the same property. But certainly the properties, at least two of the four properties that they've used in their fee petition, were not listed in the loan agreement. And what's the status of those foreclosure actions? Have they all been completed in terms of cause of action in Florida and Michigan and LA County? I would not know that. I was not involved in that. Maybe Mr. Tuesley could answer those questions. But the other portion of the plaintiff's fee petition was that the pre-breach fees were recoverable, which I've never seen before in any type of attorney fee provision, that you would be responsible for pre-breach work that was done by the bank. And going back to 2012, 2013, 2014, the Court interpreted this so broadly that I think that the Court has to look at this. And the standard here would be de novo. And that's one thing I did not mention because this is an interpretation of a contract which would require a de novo standard. So the Court would give no weight or consideration to what the trial court ruled on this. But only the interpretation part, right? Only the interpretation part, correct. Because the rest is still an abusive discretion standard, is that correct? Correct. Correct. So the question comes... In their service funds, didn't Northbrook Bank mention some other language in the agreement which covered the pre-breach fees? I think they referred to, was it 2.2? I can't recall. Again, I think Your Honor pointed this out also. It's so broad that how could you interpret it to include when you're in compliance? Basically, they're saying we can recover attorney fees from you even though you're in compliance. No one would ever agree to that type of provision to be inserted. And certainly they would not have any idea that that was opening them up to additional exposure even if they were in compliance. And obviously that was not the intent here because Northbrook Bank never brought a suit against them in 2012, 2013, or 2014, which it could have. It waited until the breach occurred and then now they're piling on. This is piling on. So I think the court has to at least carve out, if the court feels that they're entitled to the attorney's fees as well as the judgment, the court could cut out, carve out certain of these fees, which the plaintiff's fee petition kind of breaks those down into the six categories. The court can use that as its calculation to make a reduction or it can return it to the trial court for further hearings on this point. But that's the issue. One of the main issues which I think the court wanted Northbrook Bank to respond to in this sort of response is this interpretation, which was interpreted very broadly by the court. Well, weren't these arguments made at the trial court in terms of whether or not the proposal actions were still pending or whether or not the litigation was terminated? Well, it was never – those issues only came up in the fee petition, which was after the bench trial. The court entered an order letting the parties file their fee petition and gave the defendants a chance to file their response. That's the only way it was dealt with. There was nothing further after that. There was not a motion for a reconsideration file. There could have been, and maybe I would have done that, but it's not required. We're bringing it up before this court. Wouldn't that have assisted the trial court in assessing whether or not the attorney fees were excessive here? It would have flushed it out again, but it's not required that we do that. You know, the court's ruling said that the language is to be interpreted broadly, and I think the court started out with the wrong approach. It's to be interpreted narrowly. And if it had looked at it narrowly, then the court would have probably said, well, some of this stuff here really wasn't contemplated by Abbas and Freeman, especially the pre-breach stuff, which obviously was not really something Northbrook Bank was interested in. It was only after they breached that now they added this as an additional element to their attorney's fees. So what you're suggesting, if we were to follow your suggestion about remanding this on the attorney's fees, you're saying that we should just dump it on the trial court's lap? Well, with instructions to reduce the attorney's fees attributed to the pre-breach and to the three other properties. But that's the point. We don't know what happened with those three other properties. Are they still, foreclosure action still related? Well, I would say it doesn't really matter, because anything that's going on with those three other lawsuits did not involve Mr. Abbas. Those are all Freeman properties. And that's the other thing I mentioned here is, why should Mr. Abbas be basically responsible for everything involving Freeman? Aren't you both jointly and similarly liable? Yes, but it's limited by the language in the agreement. And I'm certain Mr. Abbas would say, yes, with respect to the four properties that are listed in the loan agreement, yes, I'm responsible for that. But I'm going to be responsible for actions filed against Freeman? No. And Mr. Abbas' property, it was never part of his foreclosure, correct? It was never. It's not even part of their fee petition. It was either on the Pearson or the Goethe address. But one of those, of the properties listed in the loan agreement, I think one or two involved Mr. Abbas, but none of those were part of the plaintiff's fee petition. It was never raised. The only thing that's in the plaintiff's fee petition are properties related to Freeman only. And Mr. Abbas is not responsible for all of that. It's basically they're saying you're automatically responsible for anything we do with respect to Freeman. I think you have to confine it to what's in the loan agreement. Mr. Abbas agreed to be responsible for certain property involving Freeman that's listed in the loan agreement. So that's the one issue. And the first one. And the next two. The other issue is dealing with the standing issue of the Arrange, which became a major issue. And I think that's another reason why the court wanted the CERN response to be filed, because its creation was after the fact, after the lawsuit was filed. And the case law holds you have to have standing when the lawsuit is filed. You can't create standing afterwards. And I even cited two cases in the reply brief. Now, on this issue, are you both and Mr. Freeman jointly severely liable, or are you cutting them off out of your team? We're not representing Mr. Freeman. No, we're not. And when you're making these arguments, are you also reporting to Mr. Freeman as well? Well, he would certainly benefit from it, right? He would benefit from it, even though he didn't retain us to do the appeal. So I don't know if you can really separate that out, but, you know. All right. Well, then I have a question. If a bank has no standing here, then why was Mr. Freeman trying to settle this matter with the bank? And why was he making payments to a bank if the bank didn't have any standing to bring a lawsuit, which they were saying they were trying to, you know, to bring these cause of action. So he tried to front it by trying to entertain some possible negotiations here with the bank. Am I asserting a technicality here? Yes, I am. Statute of limitations are technicalities too. You can have a valid cause of action, and yet you can be barred from pursuing it because you didn't file it in a timely fashion. Here, this, the standing had to be established at the time the lawsuit was filed, and the law is clear on that. And two of the cases, the Dutch bank. But that goes to my point with Mr. Freeman trying to settle with the bank. The lawsuit was filed. Mr. Freeman is trying to settle with the bank. Why would they want to settle with a party that has no standing and no cause of action? I agree, but that's Mr. Freeman's position. That's not Mr. Obbas's. And, again, you know, I can't really speak to that part of the case involving Mr. Freeman. But it's clear that the allonge was an essential document. Norfolk Bank plays it down, but the fact is the language in the note allonge says, this allonge is to be attached to and made an integral part. Integral part, that means essential, fundamental. And yet it's been established this was created after the lawsuit was filed on November 12, 2015. The lawsuit was filed in June of 2015. Now, one interesting thing is in the SIR response, Norfolk Bank says, oh, we created this allonge to deal with this Florida foreclosure action. That's why it was created. If you look at the plaintiff's fee petition, they've attached a copy of the Florida foreclosure action. I believe it is Exhibit L, attached to the plaintiff's petition for fees. That foreclosure complaint does not refer to the allonge. It refers to a number of documents as exhibits. The allonge is not mentioned or attached. Wasn't it done because of a summary judgment in the Florida petition? Well, I guess it was done, well, the summary judgment, this was actually, the allonge was created on, I have a table here I prepared. The allonge was actually prepared on November 12 of 2015. The motion for summary judgment was decided sometime, I think, in August of 2016. So even though the allonge was created after the lawsuit was filed, it was never disclosed as part of the motion for summary judgment. It was never put in there. It was never put in the plaintiff's disclosure statement. It was never put in the trial brief, in the list of trial exhibits. It was only put in at the time of the August 15th trial notebook. That's when it was put in. Because he raised standing for the first time late in the game. Well, I guess that's one of the reasons why they put it in there. But wouldn't it be part of the complaint? Initially, standing is something that they would have to establish when the lawsuits filed, so that would be something that they would naturally put in the complaint as an exhibit. If they have to establish it at the time the lawsuits filed, then they've got to put something in there to establish it. And yet this wasn't created until after the lawsuit was filed. And it was, again, when the court denied the motion for summary judgment, the language that it put in there saying that, or any other document, that's what I think he, Northbrook Bank, to now, okay, now disclose the allonge. But even though they had a prior to the filing of the motion for summary judgment, that's when they now decided to produce it. And producing it on the day of trial really prejudiced us because it really, you know, you're trying now to deal with a document and test its authenticity while the trial is going on. There were ways to protect yourself from any surprise or prejudice. Pardon? There were ways to protect yourself from such prejudice or surprise. Well, that's another thing as far as the discovery compliance issue, whether you're talking about the fact that we didn't issue discovery or things of that nature. Yes. Just to finish up on the one point, as far as the allonge, Mr. Gallis says that he, you know, basically had the authority to sign this document. Well, an agent cannot confer authority on itself. He's basically saying, I have the authority. But he never produced the documents showing that he had the authority. Only the principal can give the agent authority, but yet he was saying, I have the authority. So that made it defective also, this allonge. The issue with the discovery, again, the fact that they made these disclosures voluntarily, I think at that point obligated them to update or supplement things in a timely fashion. Under what basis? Well, the basis would be, I guess you could almost argue that, you know, maybe one of the orders said everything had to be complied with pursuant to Supreme Court Rule 218C. So I think there you can make an argument that by doing these disclosures on your own, it then kicked in a need for you to supplement. Was that objection ever made to the trial court pursuant to 218C? That was I don't think ever cited, but the argument that it was not disclosed in a timely fashion was made, but I don't think there was any reference specifically to Supreme Court Rule 218C. Pertaining to discovery, though, we have to cite particular rules because some of them provide different type of sanctions and other remedies, so it isn't important to cite specific rules under the code of civil procedures. So this way, the trial court has some direction in terms of what the move-on is seeking and what remedies to be able to impose. That wasn't done here. Was it? Was it done here? Other than, no, no rule was cited other than the fact that this was prejudicial because you had disclosed a trial notebook in June and now you disclose one two months later that is different, and especially with respect to the NOLA launch, which now became the major document. Well, how about, let's go back to 218. Did you do a notice to produce under 218? No, there was no written discovery issued. So how does 218 even come into play here? Well, it's, it's, there's a court order entered indicating that compliance needed to be made pursuant to Supreme Court Rule 218. I'm sorry. There was an order entered by the court requiring that. Requiring what? Requiring that all discovery be completed pursuant to Supreme Court Rule 218. Well, but you still, yes, pursuant, but you still, under 218, don't you have to give the other side note that you tell them, please produce the trial, you know, and you list what you want them to produce or produce, do a catch-all, but you didn't do that, right? There was no written discovery issued. Or a 218. I'm sorry, there was no written what? Sorry. There was no written discovery issued by the defendants. I think Justice Rogers' point is that when you're advising the trial court that this new discovery is coming in and that it's prejudicial. Prior to that, you never said, all right, pursuant to 218, what is it that you're going to produce? There was never a request made on the other side in terms of what is it that we're going to actually produce? Well, why would you need to do it? If you don't follow the rules, you have to follow. And if you don't follow the rules, you can't come in and say, well, we don't follow the rules, but we want you to give us a remedy anyway. Because the question here is, did you give the trial court an opportunity to be able to correct any possible error? And if so, under what rule? Well, the resident of the rule said that there were arguments made that this was prejudicial, that this was not disclosed. The notary launch existed at the time of the June 1 trial notebook, but it wasn't produced. It existed at the time of the plaintiff's earlier trial disclosures in which, you know, there was a statement made by the plaintiff's counsel. He signed a certification indicating that it's complete and accurate according to the rule, the rules. There's no reference to a specific rule, but he says in his attestation clause, it's in compliance with the rules. Well, when he signed that disclosure statement, the launch existed at that time, yet it was not disclosed. So there were misrepresentations made that impacted our defense of the case. Well, they were saying this is what we need to produce at trial to prove our case, right? In June or whenever it was. Then it wasn't until afterwards that you challenged the stand. So now what they needed to produce at trial to disprove your claims or prove their case had shifted. Even so. So the attestation that you kind of referred to, I don't know that there was necessarily a misrepresentation. Well, even if that were true, why did they have to produce it at the time of the actual trial? They could have produced it a week before. A week and a half, yes, for sure. But obviously it was produced at the time of trial to create a situation where it would be difficult for us to deal with. But the trial court had denied your motion in one week, right? Correct. Or reserved it. So you were in a position where you needed to do something affirmative. You knew that the other side wasn't barred from producing anything at trial that they hadn't already produced. You knew that there was a new issue about standing. And yes, it would be nice in a perfect world if we were all out there acting, you know, here's this, here's that, oh, you didn't ask me this, but that's just not how it happens. And so now we're forced to determine whether or not something should be done when you do not take the steps necessary to protect this issue from arising. Well, again, you know, as far as it would be useless at this point to even issue discovery because basically we had discovery compliance already.  We had the May 18th Plaintiff's Trial Exhibit and Witness List. And we had the June 1, 2016, Trial Notebook. So why would we want to issue any written discovery? I don't know. Okay, actually, you can go on. So, you know, that's, you know, the issue with the homage is something that, again, counsel says it's not important, but then again, why was it created? And why was this language put in there that it's integral? If it's essential and fundamental to your document, which was drafted by Mr. Toosley, then that should have been filed from the get-go when the complaint was filed. And while it's a technicality, again, bring up the issue of statute of limitations, the cases that I referred to, the Deutsch Bank v. Gilbert and the United States v. Lopez, both were cases where foreclosure judgments were reversed because standing had not been established at the time the lawsuit was filed. And in United States v. Lopez, they had a situation where the homage was executed after the filing of the lawsuit. So counsel, the bottom line here is that this reviewing court is supposed to give a lot of weight to what the trial court has determined. And we're not supposed to reverse it unless it's against the manifest weight of the evidence. Now, you've argued several issues here, but tell me what is your strongest argument, that the trial court's judgment is against the manifest weight of the evidence? Well, the fact that it did come out during the trial that the homage was created after the lawsuit was filed, and the court had that exhibit admitted into evidence, and yet it didn't give any weight to the homage at all. And I think even in the opinion that was written, it just went by the purchase and assumption agreement that was issued and doesn't give any weight whatsoever to the homage. And I think that was the court should have addressed that issue and somehow distinguished it or mentioned it in some fashion. So that, I think, was error by the court. It was an abuse of the court's discretion to ignore the homage and not give it any consideration whatsoever. And again, the issue with the attorneys' fees, if the court finds that the judgment against Mr. Arbus is valid, the reduction in attorney's fees is something that the court could either handle on its own based on, I think I pointed out what certain portions should be reduced, or remanded back to the trial court with instructions that it reduce it accordingly. Okay. Thank you. Thank you. Good morning. Good morning. So did the bank get a windfall on those banks' attorney's fees? Absolutely not. And I think it's also – I'll let you state your name, please. Sure. Adam Tueslay for Norfolk Bank. Absolutely not that they get a windfall. I mean, the real big issue in all of this is, I counted even today, four new arguments raised today for the first time at oral argument. There were a lot of arguments raised for the first time in the response brief and the reply brief and in the initial brief, all of which were never raised before the court. And so, you know, we were robbed of an opportunity to explain the situation as it pertains to the other cases or other issues regarding, you know, for example, let's just focus on that. And it's not in the record because they didn't raise it at the trial court level. All four of those – we've been paid off. All four mortgage foreclosure cases have been dismissed, the mortgages released because the judgment was paid off. So the foreclosure actions are no longer – No, they were all dismissed because we were paid by the defendants after the judgment. And so we have no mortgages, there's no foreclosure cases, there's nothing. So what about the loan modification? The loan modification was done in 2013 at the request of Mr. Freeman in order to exchange some of the collateral out because he was selling a piece of property and buying a new piece of property. Mr. Gales did testify about that during the course of the trial. At that time, a $500,000 principal payment was made by the defendants to Northbrook Bank and Trust that reduced the overall exposure. That was the consideration to agree. And so Mr. Abbas actually benefited from that 2013 work that was done by my firm because his overall liability was reduced by $500,000 at the time in which, again, these are arguments that weren't raised at the trial court level short of my questioning of Mr. Gales on the stand. That's the biggest issue in all of this is I'm hearing for the first time today that counsel believes that it's a de novo review as it pertains to the attorney's fees. Well, it's a de novo review. It's always de novo as an interpretation of contract. Right. But even his own, on page 4 of his reply, says that his reading of the loan agreement is an abuse of discretion right there. So is this judgment, you've collected this judgment in full? A hundred percent. Including the attorney's? Including all the attorney's fees. Okay. So what are we to do then? That's part of the biggest issue in all this. We received post-judgment interest. We received attorney's fees for almost an entire number of years. Is there really an issue for us? Arguably, yes. What's left? We've collected it all from print, right? Actually, no. These are all, again, facts that aren't on the record. Over the course of time, for about a year after the judgment, we received smaller payments from different sources, including the sales of some of the underlying property that was pledged as collateral. Okay. So, you know, we received some from a closing in Florida, some from Mr. Freeman, some from Mr. Abbas. You know, we received from different sources until we were eventually paid off a hundred percent in full about ten months. That's right. There was no stay of the judgment in this case, right? No, we continued on with post-judgment citations. It's all collected? Correct. It's not moved? So what about the argument that they're not going to be considerably liable? Again, that is never raised in the trial court level, never. If you read the actual response to our fee petition, there were only three arguments that were raised. One was this issue of the fees incurred in other jurisdictions. Generally, the 2013 modifications fees we were talking about was also never raised at the trial court level, the first time on appeal. So I don't know what could we do. I think it's moved. I know. There is a mechanism in place under the post-judgment collection where you can pay it off and preserve your rights to appeal, which is, I believe, what their claim would be here. But you have to stay it. Again, that's why I was surprised that this has gone on as long as it has. With two separate appeals, motions to strike, it's been also endless. And the foreclosure actions were all resolved in 2013? No, they were all resolved after this trial. After this trial? Because we were paid off. So they just released their mortgages. Every last dime, penny has been paid? Every single penny. The only thing outstanding are technically things that were incurred in the last eight months in relation to this appeal. After all the mortgages were released. We have no collateral left, but we haven't taken any steps to try to collect on that. Okay, so that may be it. That may be the issue, but I don't know. So up until that point, we had every single penny. Post-judgment interest, insurance fees, everything. Let's just pack up our bags and go, don't worry. So you have no complaints as you stand here? I have none, none. From our perspective, there really isn't. This is a tough case because the defendants did virtually nothing during the entire course of the litigation and have now tried to basically argue every single thing. Well, it must be because there was enough collateral to cover everything. But it was weird. I mean, it was really just as the letter from counsel wrote to the judge prior to the trial. It was really, all along was just an attempt, you can see in our billing entries, to give them some time to pay off the loan. Everything was just, nothing was contested. They didn't really contest standing even until the eve of trial, as you guys said. Speaking of that collateral, what about those Facebook shares? Facebook shares. It seemed like a kind of off-the-cuff, okay agreement that pretty far on the end. They did set the Facebook stack, which was a default under the loan agreement. However, due to the fact that we had all of this real property, we didn't push on that because we were over-collateralizing. So there's no reference in the record as to if there's sufficient collateral to cover. Correct. So that's why even Mr. Gass, I think, testified to that in the record, that the reason why they didn't push that was because there was a bunch of real property out there that they could foreclose on. All right. What about the issue with this allange? The allange. In our portfolio case, which was the one that I argued here about a year ago this time, the allange was created in this case as it was said on the record, and you can see it on the list for Florida. Florida. So the Florida court required the allange as part of any agreement. It was never done for here. And the reason why it was even brought up, as was mentioned before, was the addition of a standing defense. So basically I took every single document that had ever been created that showed that Northbrook Bank was the holder of this particular note. Wasn't there an argument in the record with regards to the allange not being attached to the Florida material? That was the first time today. It was never raised even in either of the two appellate briefs. Okay. So this is, again, one of the four things I mentioned that I'm hearing for the first time today, and I don't have the Florida complaint with me to verify or not, but it has to be raised before the trial court, and even on a denial-of-file standard it needed to be raised in one of the briefs so I had a chance to respond to it. And so, yes, it was. If you look at the timing in the actual billing records, it was created specifically at the time that the Florida lawsuit was filed because they have a specific rule that says no matter what the underlying agreement is, they need an allange if they dismiss it on their own motion. In this particular case, we're not talking about a promissory note. Let me just interrupt you one second. Sure. Is Florida a judicial foreclosure? It is. Okay. Florida is a judicial foreclosure. All of them except for Michigan that were filed in this case were judicial, and Michigan is both judicial and non-judicial. And so in this particular case, it's not a promissory note, and I know especially from your time on the 28th floor, there's been a lot of discussions about allanges and the mortgage foreclosure rules and things like that as far as standing, but that's not what we're talking about here. The acquisition in this particular case came via a purchase and assumption agreement after the FDIC shut down for Chicago Bank and Trust. That was the operative document. Even in the judge's opinion, that was the operative document. And especially as we're talking about a manifest weight of evidence standard, which we've referenced before, all the reasons just have to be any evidence at all to show that Northbrook Bank was the right entity. And it's not only the purchase assumption agreement. It's the schedules to the purchase and assumption agreement. It's Mr. Gales' testimony. It's the payments to Northbrook Bank, as you've referenced earlier, including the $500,000 payment. It's his oral testimony on the record that they never assigned this after they took it back. It was still at the time of trial a Northbrook Bank loan. And obviously they've paid it off. I mean, there's a lot of things to show that standing was never ever in dispute. It was their burden to prove lack of standing as an affirmative defense, which they raised on the day of trial. They put forth no valid evidence whatsoever. Even this allonge was not raised during the course of trial as being somehow this, as I heard today, an essential major document. That was never raised at trial. And Mr. Gales never testified that it was an essential major document. But he did testify that he did sign it as attorney-of-fact for GFTSC. Correct. That is correct.  No, because our local council in Florida said it was a necessary document. So it had nothing to do truly with here. It was superfluous. So we're really talking about just piling on additional evidence to the purchase and assumption agreement and all those other items that we talked about before. In regards to the discovery, was there ever a request made before the August trial date for documentation? Never. And not only did they not request discovery from us, they didn't even answer ours. And the judge still allowed them to put forth evidence regarding this standing defense. And Mr. Freeman testified on the stand. And so when this motion was brought before him and the transcript shows, he basically said what's good for the goose is good for the gander. You can't claim that you were surprised when you never disclosed anything. So under your argument, I have to bar you from putting forth any evidence, any testimony, and if you never disclosed it, you didn't answer their written discovery. And so that's another reason why I'm surprised that this is such a focus on the appeal, because the March 15th document that I signed, at that time, I believe that's all I needed to prove. And then standing was raised subsequent to that, which we've already talked about. And so I wanted to make sure that standing was never going to be an issue, so I just put forth every single document that I knew existed. And I disclosed those documents on March 15th. I did the voluntary disclosures. And I did that because prior counsel had already filed a motion to withdraw twice. And I didn't want to get into a position where there was ever a claim that I didn't disclose anything. I sat in my office and said, although they never issued me discovery, I'm going to just voluntarily disclose documents. Because you needed it. Right. Right. So here we are. What's that? So here we are. So here we are, a year and a half after the trial, and I'm not exactly sure what it is that we're arguing about. And that's why my response was the way it was, because I didn't understand. I'm still not 100 percent sure what it is. I mean, the issue, for example, of the evidentiary hearing, counsel raises this as a major issue that the judge didn't give them an evidentiary hearing on the attorney's fees. They never asked for it. So how can that be an abuse of discretion when it was never even requested? I mean, we're talking about a very, very high threshold and standard on all of these issues, that no matter what's been raised here, for the first time in the majority, I put a chart in my sole response of the nine arguments that were raised for the first time on appeal. They can't even be included. I mean, they can't be, you know, as far as abuse of discretion or manifest weight, because if they weren't presented to the trial court, how can they be a basis to overturn the trial court's decision? I think that's all I have, unless you have any other specific questions. Thank you. Thank you very much. As far as why we are here? Your opponent says that he's not exactly sure what we're arguing about. What's your response to that? I just was going to talk about that. There was no appeal bond filed, and there was no stay entered. So in order to stop any collection proceedings and still preserve our rights to appeal, it was paid off. And then that happens once in a while if you don't give them an appeal bond. That doesn't stop the planner from going ahead and collecting on the judgment, even though he filed an appeal. So did you know that all of these properties had already been terminated for closure? I can't say I knew all of them. I knew that there were some of them. I wasn't involved in the collection proceedings, but I did know that eventually the judgment entered was satisfied and that would stop the collection proceedings. But that doesn't stop you from going ahead with your appeal. If you don't get an appeal bond, you can go ahead with your appeal and have them, the other side, pursue collection proceedings. Or you can pay it off, and if you get a reversible back to the plaintiff and get the money's return. So that's where we are as far as how this turned out. And again, the allowance issue. Counsel again mentioned that this was prepared for the Florida action. And this was put in the SOAR response, that this was prepared for the Florida action. And I'm responding to that today when I said, if you look at the plaintiff's petition for attorney's fees, it's big, thick, bound volume. Exhibit L is a copy of the Florida foreclosure complaint. It does not mention the allowance and does not refer to it as an exhibit. If it was essential for the Florida action, why wasn't it listed as an exhibit in that complaint? Why wasn't it mentioned in that complaint? So all I know is the only time that it was introduced into evidence was in our case. And again, the issue of the attorney's fees. As far as an evidential hearing being requested, it was not requested. It was handled by briefs. And again, the issue of the court's interpretation of the language is something that the court can decide on a de novo basis. But the court's ruling that this was to be broadly interpreted, I think, requires this court to look at that issue on its own and see if the language can be interpreted in such a broad fashion, which the law in Illinois is that since it's in derogation of the common law, it should be construed in a strict fashion, and especially with respect to the issues of pre-breach fees, which I've never seen a case allow pre-breach fees. And that's all I have to say. Thank you. Okay. Thank you very much. Thank you. All right. Well, I thank counsels. And we'll keep this matter under advisement, and the court's adjourned. Thank you.